IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MICHAEL MELLISH, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Civil Action No. 19-1217 |
| | ) | |
| v. | ) | Judge Marilyn J. Horan |
| | ) | |
| CACH, LLC and RESURGENT CAPITAL SERVICES, LP, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

In September 2019, Plaintiff Michael Mellish filed suit against Defendants CACH, LLC and Resurgent Capital Services, LP. (ECF No. 1). Mr. Mellish subsequently filed an Amended Complaint, bringing claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p, the Fair Credit Extension Uniformity Act, 73 Pa. Stat. §§ 2270.1–2270.5, and the Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 201-1 to 201-9.3. (ECF No. 11). Defendants move to dismiss the Amended Complaint in its entirety, and in the alternative, ask the Court to dismiss certain claims for relief in the Amended Complaint. (ECF No. 13). The parties have briefed the issues, (ECF Nos. 14, 16), and the matter is now ripe for decision.

For the following reasons, Defendants' Motion to Dismiss will be denied.

**I. Background**

In 2004, Mr. Mellish obtained a personal loan for $11,000 from Beneficial Consumer Discount Company, an entity licensed under Pennsylvania's Consumer Discount Company Act (CDCA), 7 Pa. Stat. §§ 6201–19. (ECF No. 11, at 4–5). The combination of interest, fees, and other charges associated with the loan equaled an annual percentage rate of 15.99%. *Id.* at 4.

1

Although this percentage rate is higher than the general 6% interest rate cap on personal consumer loans, it was authorized by virtue of Beneficial's CDCA licensure. *Id.* at 3.

In 2013, Beneficial transferred the loan account to Springleaf Finance, Inc., an entity that was also licensed under the CDCA. *Id.* at 4–5. In 2015, Springleaf sold the loan account to CACH, LLC. *Id.* at 4. CACH, whose "sole business is purchasing defaulted consumer debt with the purpose of collecting on that debt for profit," is not licensed under the CDCA. *Id.* at 2, 5. Mr. Mellish alleges that CACH failed to get written approval from Pennsylvania's Department of Banking before purchasing the loan account, as required by the CDCA. *Id.* at 6.

In November 2018, CACH and Resurgent Capital Services, a business that collects debts on behalf of CACH, sued Mr. Mellish to collect on the loan. *Id.* at 2, 4. CACH and Resurgent sought nearly $11,000 from Mr. Mellish, including "previously charged interest, fees, and other charges" in excess of the general 6% cap. *Id.* at 4–5. Mr. Mellish states that he "was required to retain and pay for the services of an attorney to defend" against the lawsuit, and that he "lost money as a result." *Id.* at 7.

Mr. Mellish alleges that Springleaf's sale of the loan account to CACH is "void and legally unenforceable" because CACH did not obtain prior written approval in accordance with the CDCA. *Id.* at 6. In the alternative, Mr. Mellish alleges that even if CACH obtained prior approval and the sale is thus enforceable, CACH and Resurgent attempted to collect interest, fees, and other charges that they were not permitted to collect under Pennsylvania law. *Id.* Mr. Mellish claims that CACH's and Resurgent's attempt to collect on the loan account—or in the alternative, their attempt to collect interest above the 6% cap, despite a lack of CDCA licensure—violates the federal Fair Debt Collection Practices Act (FDCPA), Pennsylvania's Fair Credit Extension Uniformity Act (FCEUA), and Pennsylvania's Unfair Trade Practices and

2

Consumer Protection Law (UTPCPL). *Id.* at 8–10. Mr. Mellish further alleges that CACH and Resurgent engage in this wrongful conduct "intentionally and knowingly" and "on a systematic basis." *Id.* at 7.

CACH and Resurgent seek dismissal of all claims against them, under Federal Rule of Civil Procedure 12(b)(6). CACH and Resurgent, in the alternative, ask the Court to dismiss[1] portions of the Amended Complaint related to the relief sought by Mr. Mellish.

**II. Legal standard**

In deciding a motion to dismiss a complaint under Rule 12(b)(6), a court must first "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (internal quotations omitted). The court then must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* A complaint is sufficient only when it is facially plausible, meaning that the court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To be plausible on its face, the complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements." *Id.* The court need not "accept unsupported conclusions and unwarranted inferences." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013).

---

[1] CACH and Resurgent actually ask the Court to "strike" these portions of the Amended Complaint. However, they make no mention of Federal Rule of Civil Procedure 12(f), which allows a court, on its own or by motion, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Nor do CACH and Resurgent apply Rule 12(f)'s stringent standard, instead framing their arguments in terms of Rule 12(b)(6). Accordingly, this Court assumes that CACH and Resurgent are asking the Court to dismiss, rather than strike, these portions of the Amended Complaint.

**III. Discussion**

In his Amended Complaint, Mr. Mellish brings three claims, all premised on the applicability of the CDCA and Defendants' attempt to collect monies to which they allegedly are not entitled. Mr. Mellish alleges that CACH's and Resurgent's violation of the CDCA's requirements constitutes violations of the FDCPA (Count I), the FCEUA (Count II), and the UTPCPL (Count III). (ECF No. 11, at 8–10). CACH and Resurgent move to dismiss the Amended Complaint for failure to state a claim, first arguing that they are not bound by the CDCA's requirements. (ECF No. 13, at 2–3). CACH and Resurgent also argue that even if the CDCA applies to them, such that Mr. Mellish has pleaded facts showing CACH and Resurgent violated the CDCA, Mr. Mellish nonetheless fails to plead a necessary element of his FCEUA and UTPCPL claims: justifiable reliance. *Id.* at 4. Lastly, CACH and Resurgent ask the Court to strike Mr. Mellish's requests for treble damages, damages for emotional distress, and declaratory relief under the UTPCPL. *Id.* at 4–6.

A. Applicability of the CDCA

CACH and Resurgent first argue that the Amended Complaint should be dismissed because the CDCA does not require them to obtain licenses, and therefore the CDCA as a whole does not apply to them. (ECF No. 13, at 2–3; ECF No. 14, at 3–5). They also argue that even if the CDCA does apply, there is nothing in the CDCA that voids or otherwise renders unenforceable Springleaf's sale of the loan account to CACH. (ECF No. 13, at 3; ECF No. 14, at 5–7).

The CDCA prohibits an entity that is "in the business of negotiating or making loans" from charging or collecting "interest, discount, bonus, fees, fines, commissions, charges, or other considerations which aggregate in excess of" 6% per year on personal consumer loans under

4

$25,000, unless the entity obtains a license under the CDCA. 7 Pa. Stat. § 6203.A; *see also* 41 Pa. Stat. § 201(a) (statutory scheme, called the Loan Interest and Protection Law (LIPL), that otherwise caps the interest rate on personal consumer loans under $50,000 at 6% per annum); *Cash Am. Net of Nev., LLC v. Dep't of Banking*, 8 A.3d 282, 285 (Pa. 2010) (explaining the LIPL and CDCA). An entity that obtains a CDCA license "is authorized to make loans of $25,000 or less under the rates, terms, and conditions contained in the CDCA, which can be up to approximately 24%." *Cash Am. Net of Nev.*, 8 A.3d at 285. In short, an unlicensed entity that negotiates or makes personal consumer loans in Pennsylvania is bound by the 6% interest cap, but a CDCA licensee may charge between 6% and 24% interest on personal consumer loans under $25,000. *Id.* at 285–86.

Licensees may sell CDCA loan accounts to other licensees if they give prior written notice to Pennsylvania's Department of Banking. 7 Pa. Stat. § 6214.I. Licensees may not, however, sell loan accounts to unlicensed entities unless they get prior written approval from the Department of Banking. *Id.* And, even if the Department of Banking approves the transfer of a loan account to an unlicensed entity, "[t]he privilege of collecting the charges authorized by the [CDCA] may not be transferred to an unlicensed purchaser." 10 Pa. Code § 41.6(a). Unlicensed entities that purchase CDCA loan accounts are thus limited to charging no more than 6% interest per year.

The consequences of violating the CDCA can be severe, and the type of consequence depends "on the nature of the party prosecuting the action." *Snyder v. Ngo*, 2013 Pa. Super. Unpub. LEXIS 1183, at *11 (Pa. Super. Ct. Mar. 19, 2013). If the prosecuting party is the Department of Banking, then criminal penalties may apply. *Id.* (citing 7 Pa. Stat. § 6218). If a private civil litigant seeks enforcement of the CDCA, the available remedy is equitable, *id.*, and,

as suggested by the Department of Banking, may include voiding the loan account altogether, (ECF No. 11-1, at 14).

In a November 2001 Interpretive Letter, the Department of Banking stated that where an unlicensed entity purchases a CDCA loan account without prior approval from the Department, "a Pennsylvania court might easily conclude that" the loan account is void. *Id.* at 15–16. The Department based its reasoning on "'the general rule that an agreement which violates a provision of a statute, or which cannot be performed without violation of such a provision, is illegal and void.'" *Id.* at 14 (quoting *Am. Ass'n of Meat Processors v. Cas. Reciprocal Exch.*, 588 A.2d 491, 495 (Pa. 1991)). The Department explained, "it is clear that a CDCA loan contract that has been purchased by a person who lacks authority to do so cannot be performed without violating the CDCA," and as a result, "such a CDCA loan contract might very well be void." *Id.* Additionally, the Department noted that this outcome differs from the typical usury remedy, wherein the consumer may recover triple the amount of the excessive interest he paid. *Id.* at 16 (citing the LIPL, 41 Pa. Stat. §§ 501–02). According to the Department, "The difference between the typical usury situation of paying excessive interest and . . . a person who buys and sells CDCA loan contracts without the requisite CDCA license" is that the latter "has evaded the licensing scheme set up by the General Assembly to protect Pennsylvania consumers and may not in any way ever perform such CDCA contracts in a lawful manner." *Id.*

This Court has been unable to find any decisions by Pennsylvania's courts on the precise issue of whether loan accounts purchased by unlicensed entities without Department preapproval are void and unenforceable. But, in a 2013 unpublished opinion, the Pennsylvania Superior Court addressed the related issue of whether consumer loan contracts that contain interest rates above the 6% cap and are made (as opposed to purchased) by unlicensed entities are wholly

6

voided by illegality. *Snyder*, 2013 Pa. Super. Unpub. LEXIS 1183, at *4–5. Relying on established principles of contract law, the court in *Snyder* drew a distinction between contracts made for an illegal purpose and contracts that contain an illegal term. *Id.* at *10–11. The court explained that a contract made for an illegal purpose—for example, a contract for the sale of illegal drugs—would not be enforced, but that a single illegal term does not "necessarily render[] the whole agreement void." *Id.* at *11. The court noted that under the CDCA, "the legislature did not proscribe the making of loans without a license, thereby creating an illegal purpose in any loan made without a license," but instead "proscribed the charging of excessive interest." *Id.* at *12. The court affirmed the trial court's holding that a usurious loan made by an unlicensed entity "does not render the payer's obligation void, but only voidable as to the interest specified beyond the lawful rate." *Id.* at *9–10 (internal quotations omitted); *see also Pa. Dep't. of Banking v. NCAS of Del., LLC*, 995 A.2d 422, 440 (Pa. Commw. Ct. 2010) (explaining that "the LIPL does not invalidate, in its entirety, a loan agreement with a usurious interest rate," but instead only renders the loan agreement voidable as to the excess interest).

Here, CACH and Resurgent contend that because they are not "in the business of negotiating or making loans," they were not required to obtain licenses under the CDCA. (ECF No. 14, at 4). They further contend that because they did not have to get CDCA licenses, the CDCA is irrelevant to this matter. *Id.* at 5. The Court does not need to address at this juncture whether "in the business of negotiating or making loans" applies to CACH and Resurgent. Rather, the point is simply that the CDCA applies to Mr. Mellish's loan account, because the loan was made under the auspices of the CDCA, as evidenced by the fact that the loan contained a 15.99% interest rate and was issued by an entity that was authorized to exceed to the 6% cap.

7

The CDCA thus applies to CACH and Resurgent in the sense that the CDCA dictates what they, as unlicensed entities, may or may not do in relation to Mr. Mellish's loan account.

Next, CACH and Resurgent argue that even if the CDCA applies to them, there is nothing in the CDCA that requires the Court to find that the sale of the loan account is void and unenforceable. *Id.* at 6. As explained above, the Department of Banking speculated that where an unlicensed entity purchases a loan contract without prior approval, Pennsylvania' courts might find the loan contract void. However, this Court does not need to decide that precise issue here, because Mr. Mellish argues only for the Court to find the sale contract between Springleaf and CACH, not the loan contract itself, to be void. If CACH did not get approval from the Department before purchasing the loan account, then CACH could not lawfully purchase the loan account, thereby causing the sale contract between Springleaf and CACH to have an illegal purpose. The sale contract is therefore void and unenforceable. CACH and Resurgent consequently did not have the legal authority to seek collection on Mr. Mellish's loan account.

Mr. Mellish further pleads that even if CACH obtained Department preapproval, which would give CACH and Resurgent legal authority to collect on the loan account, CACH and Resurgent nonetheless violated the CDCA. (ECF No. 11, at 6). Mr. Mellish alleges that the amount CACH and Resurgent sought from him includes interest and fees in excess of the 6% cap, which, as unlicensed entities, they are not authorized to collect. *Id.* CACH and Resurgent do not address this alternative allegation, and instead focus their arguments on the applicability of the CDCA. The Court agrees with Mr. Mellish's contention that even if the transfer of the loan account to CACH was lawful, the transfer did not carry with it the legal authority to collect more than 6% interest. CACH and Resurgent therefore sought to collect interest to which they were not entitled, in violation of Pennsylvania law.

In summary, the CDCA applies to CACH and Resurgent such that (1) CACH was required to obtain written approval from the Department of Bank before purchasing Mr. Mellish's loan account from Springleaf, and (2) even if CACH obtained preapproval, CACH and Resurgent were prohibited from seeking interest from Mr. Mellish in excess of the 6% cap. Mr. Mellish alleges that CACH did not obtain prior approval and that CACH and Resurgent sought excessive interest. Mr. Mellish thus alleges that CACH and Resurgent sought to collect monies to which they were not legally entitled. On this basis, Mr. Mellish alleges, in Count I, that CACH and Resurgent violated the FDCPA by engaging in "false, deceptive or misleading representations or means in connection with the collection of a debt . . . and/or unfair or unconscionable means to collect or attempt to collect any debt." (ECF No. 11, at 8). Similarly, in Count II, Mr. Mellish claims that CACH and Resurgent "engag[ed] in unfair or deceptive debt collection acts or practices" in violation of the FCEUA. *Id.* at 8–9. And finally, in Count III, Mr. Mellish brings a claim under the UTPCPL, alleging that CACH and Resurgent "engag[ed] in fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." *Id.* at 9–10.

B. Fair Debt Collections Practices Act (Count I)

Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA also prohibits, among other things, "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). "Permitted by law" generally refers to state laws. *See, e.g., Allen v. LaSalle Bank*, 629 F.3d 364, 369 (3d Cir. 2011) ("If the agreement does not expressly authorize or state law

does not permit the amounts sought, [the plaintiff] has stated a viable claim under § 1692f(1)."). Beyond challenging the applicability of Pennsylvania's CDCA, CACH and Resurgent do not challenge Count I, in which Mr. Mellish brings a claim under the FDCPA. Because Mr. Mellish alleges facts showing that CACH and Resurgent violated the CDCA by seeking to collect monies to which they were not entitled by law, and CACH and Resurgent do not otherwise challenge Count I, Mr. Mellish's FDCPA claim stands.

C. Justifiable reliance under the Fair Credit Extension Uniformity Act (Count II) and the Unfair Trade Practices and Consumer Protection Law (Count III)

Next, CACH and Resurgent argue that Mr. Mellish's claims in Counts II and III fail because he did not plead justifiable reliance as required by Pennsylvania's FCEUA and UTPCPL. (ECF No. 14, at 7–9).

Under the FCEUA, a "debt collector" engages in "an unfair or deceptive debt collection act or practice" when he "violates any of the provisions of the [FDCPA]." 73 Pa. Stat. § 2270.4(a). The FCEUA also prohibits a "creditor" from using "any false, deceptive or misleading representation or means in connection with the collection of any debt," as well as "unfair or unconscionable means to collect or attempt to collect any debt," such as seeking collection of amounts to which the creditor is not entitled by contract or law. 73 Pa. Stat. § 2270.4(b)(5), (6). Additionally, "[i]f a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under [the FCEUA], it shall constitute a violation of the [UTPCPL]." 73 Pa. Stat. § 2270.5(a). The FCEUA does not have its own private enforcement mechanism, but instead is enforced through the UTPCPL's remedial provision. *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015), *overruled in part on other grounds by Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019). In other words, the FCEUA and the UTPCPL go hand-in-hand: "to plead a cause of action under the FCEUA, plaintiffs must be

10

able to state a claim under the UTPCPL." *Riviello v. Chase Bank USA, N.A.*, 2020 U.S. Dist. LEXIS 37543, at *7 (M.D. Pa. Mar. 4, 2020) (citing *Kaymark*, 783 F.3d at 182).

The UTPCPL contains a catchall provision that prohibits "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). To state a claim under the "deceptive" prong, a plaintiff must allege "that he justifiably relied on the defendant's wrongful conduct or representation, and that he suffered harm as a result of that reliance." *Milliken v. Jacono*, 103 A.3d 806, 812 (Pa. 2014). As an initial matter, a plaintiff does not have to establish actual deception by the defendant's wrongful conduct. *Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1023 (Pa. 2018). Rather, the plaintiff only needs to show that the wrongful conduct was "capable of being interpreted in a misleading way." *Id.* (internal quotations omitted). It follows, then, that "justifiable reliance" can be broader than a showing that the plaintiff acted, or failed to act, because he was misled by the defendant's wrongful conduct. *See generally Richards v. Ameriprise Fin., Inc.*, 152 A.3d 1027, 1034–35 (Pa. Super. Ct. 2016) ("[C]ourts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection."). So long as the plaintiff acted, or failed to act, in response to and as a result of the defendant's wrongful conduct, he has established justifiable reliance under the "deceptive" prong of the UTPCPL's catchall provision. *See* 73 Pa. Stat. § 201-9.2(a) (providing that a UTPCPL plaintiff must show that he suffered an "ascertainable loss . . . *as a result of* the use or employment by any person of a method, act or practice declared unlawful" under the UTPCPL) (emphasis added).

According to Mr. Mellish, CACH and Resurgent violated the UTPCPL and the FCEUA when they filed the underlying lawsuit, claiming that they were entitled to collect monies from Mr. Mellish, when in fact, they were not so entitled. (ECF No. 11, at 9–10). Mr. Mellish alleges

11

that, in response to CACH's and Resurgent's collection lawsuit, he retained and paid for the services of an attorney. *Id.* at 7. Mr. Mellish has therefore pleaded facts showing that he acted as a result of CACH's and Resurgent's alleged wrongful conduct, such that he justifiably relied on said conduct, as required by the UTPCPL and the FCEUA. Accordingly, CACH's and Resurgent's Motion to Dismiss must be denied as to this issue.

D. Claims for relief

Lastly, CACH and Resurgent ask the Court to dismiss Mr. Mellish's requests for treble damages, damages for emotional distress, and declaratory relief under the UTPCPL. (ECF No. 14, at 9–14).

As to the issue of treble damages, the UTPCPL provides that "[t]he court may, in its discretion, award up to three times the actual damages sustained." 73 Pa. Stat. § 201-9.2(a). In interpreting this statute, the Pennsylvania Supreme Court explained, "the courts' discretion to treble damages under the UTPCPL should not be closely constrained by the common-law requirements associated with the award of punitive damages." *Schwartz v. Rockey*, 932 A.2d 885, 898 (Pa. 2007). Nonetheless, courts "should focus on the presence of intentional or reckless, wrongful conduct, as to which an award of treble damages would be consistent with, and in furtherance of, the remedial purposes of the UTPCPL." *Id.*; *see also Meyer v. Cmty. Coll. of Beaver Cty.*, 93 A.3d 806, 815 (Pa. 2014) (noting the "hybrid" nature of treble damages under the UTPCPL, in that treble damages are primarily remedial, but also "contain a deterrent, punitive element").

Mr. Mellish alleges that CACH and Resurgent know that they are not licensed under the CDCA, and yet they intentionally and knowingly purchase and seek collection on CDCA loans without proper authority "on a systematic basis." (ECF No. 11, at 7). Mr. Mellish argues that

12

CACH and Resurgent thus engaged in "intentional and reckless, wrongful conduct," such that he is entitled to treble damages under the UTPCPL. (ECF No. 16, at 21). Although these facts will need further development in the course of discovery, they are nevertheless sufficient to cross the Rule 12(b)(6) threshold. Accordingly, this part of CACH's and Resurgent's Motion will be dismissed.

Finally, regarding the issue of damages for emotional distress and declaratory relief, Mr. Mellish states that he is not seeking either. (ECF No. 16, at 21 n.3). To the extent his Amended Complaint suggests that he is requesting either of those remedies, such requests are deemed withdrawn. Consequently, CACH's and Resurgent's request that the Court dismiss Mr. Mellish's claim for emotional distress damages and declaratory relief is therefore moot.

**IV. Conclusion**

THEREFORE, based on the foregoing, Defendants' Motion to Dismiss is DENIED. Defendants shall answer the Amended Complaint in accordance with the timeline set out in the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

DATE March 26, 2020

Marilyn J. Horan
United States District Judge